## BUTLER ARMCO INDEPENDENT UNION, Appellant,

v.

## ARMCO INC., a/k/a Armco Steel Corp., Appellee.

### No. 82–5351.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Jan. 28, 1983.

Argued March 4, 1983.

---

John W. Murtagh, Jr., Greenfield & Murtagh, Pittsburgh, Pa., for appellant.

Henry J. Wallace, Jr., Robert F. Prorok, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellee.

Before SEITZ, Chief Judge, and ADAMS and GARTH, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This appeal presents the question whether a district court may enjoin an employer from consolidating two seniority units when a union alleges that the issue in a current dispute is identical with one resolved in an earlier proceeding. The district court declined to issue the injunction. We affirm.

### A.

Plaintiff, the Butler Armco Independent Union, represents the hourly workers in the Armco Steel Company plant in Butler, Pennsylvania. The workers are assigned to seniority units, or departments. The portion of the collective bargaining agreement that covers seniority unit issues generally is Article VIII, Section C, paragraphs 1–3 ("C(1–3)"). Armco has, on occasion, attempted unilaterally to merge the lines of progression of various seniority units. These acts have been challenged by the union through the grievance and arbitration provisions of the collective bargaining agreement, and the union has been successful. It appears that the arbitrator has never ruled directly on the effect of equipment relocation—governed by Article VIII, Section G, paragraph 6 ("G(6)"), of the collective bargaining agreement—on the contract's general seniority unit rules, C(1–3).

Two of Armco's seniority units were known as the "Stores Department" and the "Engineering Stores Department." The company wanted to merge these two units, and apparently engaged in some preliminary negotiations on the subject with the union. These talks did not produce an agreement. On or about April 22, 1982, Armco unilaterally merged the two departments. The merger, which resulted in the transfer of three employees from the Stores Department to the Engineering Stores Department, was, according to the company, part of a reorganization which was to involve the relocation of three pieces of equipment. At the present time, it may be

that only one of the pieces has in fact been moved; the record is unclear whether the other two pieces either have been moved or will be moved later.

The union protested Armco's action by filing suit in district court to enjoin the merger of the departments. Armco argued that the proper course for the union to take in contesting the action was the grievance and arbitration procedure outlined in the collective bargaining agreement. The union responded that the merger question had already been resolved in arbitration, and that the failure of the district court to enjoin the company would, in effect, defeat the previous decisions in the union's favor, and reduce arbitration to a "hollow formality." The district court concluded that Armco was not raising the same arguments in a situation that was "materially the same" as prior arbitrations, and therefore, Armco was not attempting to defeat its responsibilities under the previous decisions. Consequently, the district judge refused to enjoin the department merger, and instructed the union that if it wished to dispute the merger it would have to take the matter to arbitration. A timely appeal was filed by the union.

### B.

■ In labor law, arbitration is clearly the preferred method for resolving disputes between the union and the employer. *See Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Steelworkers v. Enterprise Wheel Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (known collectively as the "Steelworkers' Trilogy"); *Local 103 I.U.E. v. RCA Corp.,* 516 F.2d 1336 (3d Cir.1975). Courts must therefore "tread gingerly before intruding upon the arbitral process." *Lewis v. AFSCME,* 407 F.2d 1185, 1191 (3d Cir.) *cert. denied,* 396 U.S. 866, 90 S.Ct. 145, 24 L.Ed.2d 120 (1969). While the rule of deferring to arbitration is generally well-understood, problems arise in its application to a situation in which the action by one

party in a particular matter is similar to an action that an arbitrator had previously ruled was prohibited by the collective bargaining agreement. If the court orders the parties to arbitrate the new matter, it runs the risk of reading the prior decision so narrowly that it becomes almost meaningless. On the other hand, by ruling that the prior decision controls the case then before it, the court may be arrogating to itself the role of contract interpreter which, under the *Steelworkers' Trilogy,* should be left, at least in the first instance, to the arbitrator.

Although not entirely free from doubt, it appears that the union relies on two theories. First, it maintains that the current dispute is not arbitrable simply because the same issue has been resolved in a prior arbitration. This argument would appear to be foreclosed, however, by our holding in *Metropolitan Edison v. NLRB,* 663 F.2d 478 (3d Cir.1981), *cert. granted,* 457 U.S. 1116, 102 S.Ct. 2926, 73 L.Ed.2d 1327 (1982), that, absent contractual language to the contrary, one arbitrator's interpretation of a collective bargaining agreement is not binding on a subsequent arbitrator. Second, the union urges that the rearbitration clause in the contract renders the current dispute not arbitrable.

■ In *Local 103 of the International Union of Electrical, Radio and Machine Workers v. RCA Corporation,* 516 F.2d 1336 (3d Cir.1975), this court first addressed whether a district court could enjoin arbitration of a question alleged to be identical with an issue previously decided by an arbitrator. The collective bargaining agreement in *Local 103* contained both a broad ban on re-arbitration and a clause stating that all disputes "with respect to the interpretation or application of *any provision* of this Agreement" were to be resolved through the grievance and arbitration procedures. 516 F.2d at 1340 (emphasis added by the court). Relying on the scope of the arbitration clause, we held that the question whether the re-arbitration provision covered the dispute between the parties was itself a matter of interpretation which the collective bargaining agreement required

the arbitrator, rather than the court, to resolve.

[N]o provision in the contract removes a dispute over the interpretation or application of the re-arbitration provision from the arbitration process. Therefore, we cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & Gulf Navigation Co., supra,* 363 U.S. at 582–83, 80 S.Ct. at 1353. Consequently, we conclude that it is for the arbitrator to evaluate the relevance and effect of the [prior] arbitration award and opinion; it is for him to decide whether it qualifies "in industrial common law", through "experience developed by reason and reason tried and tested by experience," as the "same question or issue" presented by the immediate grievance which therefore may not "be the subject of arbitration more than once."

516 F.2d at 1340–41 (footnote omitted).[1]

■ The relevant provisions of the collective bargaining agreement between the parties in the case at hand are similar to those in *Local 103.* Article VII, Section E(3) of the agreement gives the arbitrator the "jurisdiction and authority to interpret and apply the provisions of this Agreement only insofar as necessary to the determination of [a] grievance ...," and Article VI, Section B(1)(a) makes the grievance and arbitration provisions "the sole recourse with respect to any claim by an employee of a violation of the Agreement by the Company." *Appx.* at 80r, 84r. Having examined these arbitration clauses, we cannot say with "positive assurance" that they do not assign to the arbitrator the task of determining the applicability and effect of the rearbitration clause. It is clear, therefore, that under *Local 103* the courts must leave to the arbitrator the task of determining whether consideration of the seniority unit merger would violate the re-arbitration clause.[2] Thus, the district court properly refused to issue the injunction requested by the union.

### C.

The decision of the district court will be affirmed.

---

1. We do not believe that the union has asserted that it is seeking to enforce the terms of a prior arbitration award or settlement agreement. In such a situation, the standard the district court would apply in determining whether to enforce the initial award is whether it can be said "with positive assurance" that the award or settlement agreement is intended to cover the current dispute. *United Mine Workers of America District No. 5 v. Consolidation Coal Company,* 666 F.2d 806, 811 (3d Cir.1981).

2. The re-arbitration clause provides:

   It is agreed that no grievance will be considered under the terms of this Article which would revoke, reverse, or otherwise alter the terms or conditions of any grievance disposed of as above outlined; provided that where the agreement has been incorrectly construed or applied, by mutual agreement, the original case may be re-opened and reviewed.

   *Appx.* at 84r.