**TRANSIT–MIX CONCRETE CORPORATION,**
Petitioner,

v.

**LOCAL UNION NO. 282, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA,** Respondent-Cross-Petitioner.

No. 84 Civ. 8122 (JES).

United States District Court, S.D. New York.

Sept. 14, 1986.

Altieri, Kushner, Miuccio & Frind, P.C., New York City, for petitioner; Alexander A. Miuccio, Robert F. Meehan, of counsel.

Cohen, Weiss & Simon, New York City, for respondent-cross-petitioner; Eugene S. Friedman, Franklin K. Moss, of counsel.

SPRIZZO, District Judge.

## BACKGROUND

The basic facts underlying this action are not in substantial dispute, and are as follows. Petitioner Transit-Mix Concrete Corporation ("Transit-Mix") and respondent-cross-petitioner Local Union No. 282, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local 282" or the "Union") have, for many years, been parties to collective bargaining agreements ("CBAs"). *See* Declaration of Robert Sasso ("Sasso Dec.") at ¶ 2. These agreements have provided for the arbitration of all disputes. *See, e.g.,* Ex. A to Sasso Dec. ("1984–87 CBA")[1] at ¶ 23(b); Ex. A to Affidavit of Alexander A. Miuccio ("Miuccio Aff.") ("1978–1982 Contract") at ¶ 23(b).[2]

On February 13, 1976, Transit-Mix entered into an agreement with Colonial Sand and Stone Co., Inc. ("Colonial") to purchase Colonial's accounts receivable, to assume certain Colonial projects, and to purchase Colonial's major tangible assets—its ready-mix concrete trucks and its four yards. Each company had entered into CBAs with Local 282. On March 24 and May 14 of 1976, hearings were conducted by Arbitrator Milton Rubin to determine the Transit-Mix seniority status of the former Colonial drivers as a consequence of Transit-Mix's "buy-out" of Colonial. In June of 1976, Rubin determined, *inter alia*, that the Colonial drivers who had lost their employment because of the buy-out were to be placed at the bottom of the Transit-Mix seniority lists. *See* Ex. B to Sasso Dec.

In 1979, after three years' use of the Colonial seniority list when needed, Transit-Mix objected to continued use of the list, ostensibly "because of the lapse of time and difficulty in contacting the [former] Colonial [drivers] to shape-up for work." *See* Petitioner's Memorandum of Law ("Pet. Memo") at 2. After a hearing before a Labor-Management Dispute Panel, which deadlocked, *see* Sasso Dec. at ¶ 4, the dispute was submitted to an impartial arbitrator in accordance with § 23 of the 1978–82 CBA. On June 21, 1979, the parties presented to Arbitrator Herbert K. Lippman the following issue:

What is the reasonable length of time within which an employee of the Company must shape up, call or contact the Company to remain part of the Company work force and retain his seniority?

*See* Ex. B to Miuccio Aff. at 1; Ex. C to Sasso Dec. at 1.

On June 27, 1979, Lippman issued his award. The award states simply:

\* \* \* \* \* \*

(d) *Presentation of Dispute.* (1) The jurisdiction of the Panel may be invoked by the Union, the Association or by any Employer signatory to this Agreement by the service of a written notice upon the Union, if invoked by an Employer, or upon the Panel, if invoked by the Union, which notice shall contain a clear and concise specification of the dispute and identification of the parties involved. *See* Ex. A to Sasso Dec. at ¶ 23.

---

1. The 1984–87 CBA provides, in relevant part that:

(b) *Jurisdiction of Panel*

Any and all complaints, grievances, controversies or disputes between the Union and the Employer in connection with or in relation to this Agreement or concerning the interpretation, application, performance or alleged breach thereof by either of the parties hereto, or by any other party signatory to this industry-wide collective bargaining Agreement or with respect to any term or condition of employment hereunder, which the parties are unable to settle between them, may, except for disputes concerning discharge of or disciplinary action against an Employee, be submitted for arbitration and final determination to the Joint Labor-Management Disputes Panel....

2. The 1978–1982 Contract clearly states, in relevant part, the exact same language as its 1984–87 counterpart. Compare Ex. A to Miuccio Aff. (1978–1982 Contract) at ¶ 23(b), (d)(1), *with* Ex. A to Sasso Dec. (1984–87 CBA) at ¶ 23(b), (d)(1).

An employee who does not shape up, call or contact the Company for work for a period of one year, shall be deemed to have abandoned his position with the Company and shall no longer be considered an employee of the Company.

*See* Ex. B to Miuccio Aff. at 6; Ex. C to Sasso Dec. at 6.

After being informed of the arbitration award in early 1980, Ted Katsaros, a former Colonial driver, filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"). Katsaros charged, *inter alia,* that Local 282, "in complicity with Transit-Mix," failed to adequately notify him and the other Colonial drivers that the Lippman arbitration was taking place, and of the terms of the Award. *See, e.g.,* Ex. C to Miuccio Aff.[3] Subsequent to investigation and a hearing before an Administrative Law Judge, the NLRB found that, "[b]y arbitrarily, and without lawful and legitimate reason, failing to notify employees it represents of the terms of an arbitration award significantly altering the requirements to be fulfilled to maintain their seniority," the Union had breached its duty of fair representation. *See Local 282,* 267 N.L.R.B. 1130 (1983); Ex. D to Miuccio Aff. at 7, ¶ 3.

In its Order, subsequently enforced by the Second Circuit, *see NLRB v. Local 282,* 740 F.2d 141 (2d.Cir.1984), the NLRB directed that Local 282:

(2)(a) Request the arbitrator who heard the arbitration at issue herein to reopen the proceeding to provide for notice of the terms of the award to affected employees and a retroactive grace period for those employees who have been dropped from Transit-Mix Concrete Corp.'s seniority list.

\* \* \* \* \* \*

(c) Make whole those employees who lost work due to its unlawful conduct....

*See* Ex. D to Miuccio Aff. at 8–9.

By letter dated October 1, 1984, and in compliance with the Order issued by the NLRB and enforced by the Second Circuit, the Union notified Transit-Mix of Local 282's request "that the grievance and arbitration proceeding commenced by Transit-Mix ... which resulted in the June 27, 1979 award of Herbert K. Lippman, be reopened to provide for notice to affected employees and a retroactive grace period." *See* Ex. D to Sasso Dec.; *see also* Ex. E to Miuccio Aff. That notice went on to express Local 282's intent to treat Transit-Mix's refusal of this request "as a dispute and to seek a final determination of the issues applicable thereto in accordance with the Settlement and Disputes procedures as set forth in our collective bargaining agreements." *See id.*

By Notice of Petition dated October 22, 1984—and before Local 282 had invoked the dispute resolution procedures—Transit-Mix brought this action to stay arbitration in New York State Supreme Court, New York County. Local 282 removed the action, and it was accepted by this Court as related to *Katsaros v. Transit-Mix Concrete Corp.,* 615 F.Supp. 450. *See* note 3 *supra.* On November 26, 1984, Local 282 submitted its formal request to arbitrate to the Co-Chairman of the Joint Labor-Management Disputes Panel pursuant to § 23 of the agreements between the parties. *See* Sasso Dec. at ¶ 6 and Ex. E thereto.[4] That formal request states:

---

3. A more complete description of the facts of Katsaros' case is set forth in this Court's previous Opinion and Order. *See Katsaros v. Transit-Mix Concrete Corp.,* 585 F.Supp. 576 (S.D.N.Y.1984). The Court has previously dismissed Katsaros' claims against the Union, brought pursuant to 29 U.S.C. § 185, with respect to its alleged failure to notify him of the Lippman arbitration and its award, as time-barred. *See id.* at 578–79; *see also Katsaros v. Transit-Mix Concrete Corp.,* 615 F.Supp. 450, 451–53 (S.D.N.Y.1985).

4. While this action by Transit-Mix was commenced before any attempt by the Union to formally invoke the arbitration proceedings provided for in the agreements between the parties, "since the dispute resolution procedures have now been invoked," the Union "agrees that there is now a ripe case or controversy to be adjudicated." *See* Respondent's Memorandum of Law ("Resp. Memo") at 5 n. 1.

Local 282 seeks, through this proceeding, to provide for notice to affected employees of Transit-Mix, a retroactive grace period and to [sic] a final determination of all contractual issues applicable to the failure of Transit-Mix to give timely and adequate notice to its employees of the Lippman Award.

See Ex. E to Sasso Dec. at 2.

## DISCUSSION

Petitioner Transit-Mix seeks a stay of the arbitration requested by the Union. The Union cross-petitions to compel that arbitration. Transit-Mix argues that the Union's request to arbitrate the issues of notice to affected employees and a retroactive grace period for employees dropped from Transit-Mix's seniority list as a result of the 1979 Lippman award is, in effect, an attempt to vacate that award and to change it retroactively so that the Union can avoid some or all of its liability for failing to notify its members of the 1979 Lippman arbitration and the terms of the award. Contending that the parties have not specifically agreed to arbitrate the question of responsibility for notifying the affected employees of Lippman's award, Transit-Mix further argues, pursuant to § 23(g)(3) of the CBAs, that the Lippman award is "final, conclusive and binding upon the parties," and cites several authorities for the proposition that arbitration awards, once final, should not be reopened. See, e.g., Paperhandlers Union No. 1 v. U.S. Trucking Corp., 441 F.Supp. 469 (S.D.N.Y.1977).[5] For the reasons set forth below, the Court rejects petitioner's contentions.

Both the 1984–87 CBA and the 1978–1982 Contract contain the same extremely broad arbitration clause at ¶ 23(b), which requires that the parties arbitrate all disputes relating to the agreement or concerning its interpretation. See notes 1 & 2 supra. Given that broad arbitration agreement, the Court's function on a motion to stay or compel arbitration is limited to a threshold inquiry as to whether the dispute arguably falls within the purview of that broad agreement. See, e.g., United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). The Court may not consider the merits of the dispute, nor may it be impacted, in deciding whether the dispute is arbitrable, by its own notion of which position is correct or which position is likely to prevail. Such issues are for the arbitrator. Cf. Maria Victoria Naviera, S.A. v. Cementos Del Valle, S.A., 759 F.2d 1027, 1030–31 (2d Cir.1985); Glover Bottled Gas Corp. v. Local 282, 711 F.2d 479, 481 (2d Cir.1983); Conticommodity Services Inc. v. Phillip & Lion, 613 F.2d 1222, 1224 (2d Cir.1980). Tested by that standard, the dispute in this case is clearly arbitrable.

The Union's formal request to arbitrate states clearly that the Union seeks, inter alia, "a final determination of all contractual issues applicable to the failure of Transit-Mix to give timely and adequate notice to its employees of the Lippman award." See Ex. E to Sasso Dec. at 2 (emphasis added). The employer claims that the provisions of the agreement preclude any attempt to relitigate any issues encompassed by the prior award. There is, therefore, clearly a dispute between the

---

5. Transit-Mix also contends that Local 282's demand is barred by any applicable statute of limitations, see 9 U.S.C. § 12; United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 60–64, 101 S.Ct. 1559, 1562–64, 67 L.Ed.2d 732 (1981) (ninety days); Del Costello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 158 n. 12, 103 S.Ct. 2281, 2287 n. 12, 76 L.Ed.2d 476 (1983) (six months), and by the doctrine of laches. See Conticommodity Services, Inc. v. Phillip & Lion, 613 F.2d 1222, 1225 (2d Cir.1980). While the Court is not persuaded that the Union's demand is, in essence, a motion to vacate the award, whether the dispute

is, as such, time-barred is a procedural question, which is usually addressed, in the first instance, by the arbitrator. See generally, John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 555–59, 84 S.Ct. 909, 917–19, 11 L.Ed.2d 898 (1964); see also IUOE, Local 150 v. Flair Builders, Inc., 406 U.S. 487, 491, 92 S.Ct. 1710, 1712, 32 L.Ed.2d 248 (1972) (laches); Conticommodity, supra, 613 F.2d at 1225 (laches and statute of limitations); Reconstruction Finance Corp. v. Harrisons & Crosfield, 204 F.2d 366, 369 (2d Cir.), cert. denied, 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953) (statute of limitations).

parties as to whether, under the applicable CBA, the issue of notice may properly be considered. That dispute falls squarely within the arbitration clause of the CBA, which requires that all disputes be arbitrated. *See Emery Air Freight Corp. v. Local Union 295*, 786 F.2d 93, 96–97 (2d Cir.1986) (citing *United Steelworkers, supra*, 363 U.S. at 568, 80 S.Ct. at 1346).

Petitioner's principal argument is "that there is nothing in the arbitration clause of the collective bargaining agreement that can be construed to cover a unilateral demand by the Union to 'reopen' and modify a 1979 arbitration award retroactively, in the face of the clear and express language of the agreement which makes such awards 'final, conclusive and binding.'" *See* Pet. Letter, dated April 11, 1986, at 1–2. However, this argument, if anything, supports the Union's position. The "finality" provision upon which Transit-Mix relies to advance this argument is itself a part of the collective bargaining agreement, *see, e.g.*, Ex. A to Sasso Dec. at ¶ 23(g)(3), and thus any dispute involving its interpretation or application with respect to this dispute should be referred to the arbitrator. *See Rochdale Village, Inc. v. Public Service Employees Union*, 605 F.2d 1290, 1295–96 (2d Cir.1979); *cf. McAllister Bros., Inc. v. A & S Transportation Co.*, 621 F.2d 519, 522 (2d Cir.1980). In sum, because the Union has made a claim which on its face is governed by the contract and the arbitration clause is broad, arbitration should be ordered by the Court. *See Emery, supra*, 786 F.2d at 97.

This conclusion is buttressed by the admonition of the Supreme Court that "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail [against the presumption in favor of arbitrability]." *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 585, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960). There is no such evidence in this case.[6] There is no provision of the CBA that excludes disputes as to the finality of an arbitration award from the broad sweep of the arbitration clause. In the absence of such a provision, any dispute as to the finality of the award must be left to the arbitrator. *Cf. Woodcrest Nursing Home v. Local 144*, 788 F.2d 894, 898 (2d Cir.1986) (per curiam) (and cases cited therein).

It may very well be that the Union is improperly seeking to vacate or overturn the Lippman award, or to undermine its finality, *see* Resp.Memo., *supra* note 4, at 6, and it may fairly be argued that in requesting that Transit-Mix agree to "reopen" the Lippman proceeding, the Union, by using the term "reopen" as directed by the NLRB and the Second Circuit, may have created some ambiguity as to the issue(s) it now wishes to arbitrate.[7] However, given the broad arbitration agreement set forth in the CBA, whether that is the case necessarily involves a resolution of the merits of the dispute, which is a matter solely within the province of the arbitrator. *Cf. AT & T Technologies v. Communications Workers of America*, —— U.S. ——, ——, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986); *Woodcrest, supra*, 788 F.2d at 897–98 (and cases cited therein).

## CONCLUSION

For the reasons enumerated above, the petition of Transit-Mix to stay arbitration is

---

**6.** The only disputes arguably excluded from the broad ambit of § 23(b) of the CBAs are disputes concerning "discharge of or disciplinary action against an [e]mployee." Those disputes are resolved in accordance with § 23(f), which merely provides for submission of a discharge/discipline dispute directly to one of several designated arbitrators. *See* Ex. A to Sasso Dec. at ¶ 23(f)(1); Ex. A to Miuccio Aff. at ¶ 23(f)(1). Lippman is listed as one of those arbitrators in the 1984–87 CBA. *See* Ex. A to Sasso Dec. at Appendix C. Unfortunately, the appendix listing the impartial arbitrators in 1978–82 contract

was not included in Exhibit A to the Miuccio Affidavit.

**7.** As the Court noted at oral argument of this motion, Local 282 can resolve any ambiguity, and allay any fears that it seeks to subvert the Lippman Award, by merely serving a simple, unambiguous demand to arbitrate the issue(s) of notice and a retroactive grace period. To the extent that it may be necessary, the Court grants leave to do so.

denied. Local 282's cross-petition to compel arbitration is granted. The Clerk of the Court shall enter judgment accordingly.

It is SO ORDERED.