**TRANSIT MIX CONCRETE CORPORATION, Petitioner-Appellant,**

v.

**LOCAL UNION NO. 282, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent-Cross Petitioner-Appellee.**

No. 619, Docket 86–7847.

United States Court of Appeals, Second Circuit.

Argued Jan. 9, 1987.

Decided Jan. 22, 1987.

Alexander A. Miuccio, New York City (Altieri, Kushner, Miuccio & Frind, New York City, on the brief), for appellant Transit Mix.

Eugene S. Friedman, New York City (Franklin K. Moss, and Cohen, Weiss and Simon, New York City, on the brief), for appellee Local No. 282.

Before FEINBERG, Chief Judge, and TIMBERS and PIERCE, Circuit Judges.

TIMBERS, Circuit Judge.

Appellant Transit Mix Concrete Corporation ("appellant") appeals from a judgment and order entered in the Southern District of New York, John E. Sprizzo, *District Judge*, denying appellant's petition for a permanent stay of arbitration of a labor dispute and granting a cross petition of appellee Local Union No. 282, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("appellee") to compel arbitration of that dispute. 643 F.Supp. 1002.

The collective bargaining agreement ("the CBA")[1] between the parties contains a broad arbitration provision. In another clause, the agreement states that all arbitration awards "shall be final, conclusive and binding" ("the finality clause").

Appellant claimed in the district court that an earlier arbitration award already had resolved the issues raised in the present dispute which is the subject of appellee's cross petition to compel arbitration ("the present dispute") and therefore that the finality clause barred arbitration of the present dispute.

In granting appellee's cross petition to compel arbitration, the district court held that the CBA's broad arbitration clause encompassed the present dispute, including questions as to the applicability and effect of the finality clause.

On appeal, appellant claims that the district court erred in compelling arbitration since, by virtue of the finality clause, appellant had not agreed to arbitrate the present dispute.

We hold that the present dispute is arbitrable and that the CBA's broad arbitration clause leaves to the arbitrator, at least in the first instance, the task of determining both the extent to which the earlier arbitration award resolved the issues raised in the present dispute and the effect of the finality clause. We hold that the district court correctly granted the cross petition to compel arbitration. We affirm.

I.

The facts are straightforward and not in dispute.

Appellant is a supplier of ready-mix concrete. It employs drivers to deliver concrete to construction sites throughout the New York metropolitan area. Appellee is a labor union.

We previously have set forth facts, relevant to the instant appeal, in an opinion enforcing an order of the National Labor Relations Board ("the NLRB") against appellee. *NLRB v. Local 282, International Brotherhood of Teamsters*, 740 F.2d 141 (2 Cir.1984). We assume familiarity with that opinion. We shall summarize here only those additional facts believed necessary to an understanding of the issue raised on the instant appeal.

---

1. During the period of time relevant to this appeal, appellant and appellee were parties to three CBAs. One covered the period from July 1, 1978 to June 30, 1982; the second the period from July 1, 1982 to June 30, 1984; and the third the period from July 1, 1984 to June 30, 1987. The three CBAs are identical in all respects relevant to this appeal. Unless otherwise indicated, throughout this opinion a reference to "the CBA" is to either the CBA in effect at the time relevant to the discussion or to the three CBAs.

Appellant and appellee are parties to a CBA making appellee the exclusive bargaining representative of the drivers employed by appellant. That agreement sets forth a procedure for the settlement of disputes. Arbitrable disputes are submitted first to a Joint Labor-Management Disputes Panel ("the Panel"), which acts as a "Board of Arbitration". Appellant and appellee each appoint an equal number of representatives to the Panel. In the event that the Panel is deadlocked, the dispute is submitted to an "impartial arbitrator". The impartial arbitrator is selected from a list set forth in an appendix to the CBA. The selection is by lot unless "the parties involved in the selection process ... agree upon [an] alternate procedure for such selection."

The arbitration clause of the CBA sets forth the types of disputes that are arbitrable:

> *"Jurisdiction of the Panel.* Any and all complaints, grievances, controversies or disputes between the Union [appellee] and the Employer [appellant] in connection with or in relation to this Agreement or concerning the interpretation, application, performance or alleged breach thereof by either of the parties hereto, or by any other party signatory to this industry-wide collective bargaining Agreement or with respect to any term or condition of employment hereunder, which the parties are unable to settle between them, may, except for disputes concerning discharge of or disciplinary action against an Employee, be submitted for arbitration and final determination to the [Panel]."

The CBA provides further that the impartial arbitrator "shall have all the powers granted to the Panel herein."

The finality clause is a *"Miscellaneous Provision [ ]"* in the "Settlement of Disputes" section of the CBA. It provides: "All determinations, decisions and awards shall be final, conclusive and binding upon the parties hereto and may be enforced as any other arbitration award in accordance with the laws of the State of New York."

On February 13, 1976, appellant purchased the assets of the Colonial Sand and Stone Company ("Colonial"), theretofore a rival ready-mix concrete supplier. At that time Colonial employed 237 drivers ("the Colonial drivers"); appellant employed 72 drivers ("appellant's drivers"). A CBA between appellee and Colonial made appellee the exclusive bargaining representative of the Colonial drivers.

Prior to the February 13 agreement, both appellant and Colonial maintained seniority lists of their drivers. When drivers were needed, they were called to work according to their positions on the seniority lists. Some drivers worked regularly; others were temporarily out of work, or "laid off". Under a provision of the CBA between appellant and appellee, if a purchase of the assets of another corporation is a "merger", then the drivers of the acquired corporation are inserted into their appropriate positions on the seniority list of appellant's drivers. If the purchase is a "buy-out", then the drivers of the acquired corporation "go to the bottom of the list." [2] Appellant treated the purchase of Colonial as a buy-out. An arbitration award made in June 1976 confirmed this characterization of the transaction. Accordingly, the Colonial drivers were placed at the bottom of the seniority list of appellant's drivers.

By 1978, appellant had attempted to recall for regular work those Colonial drivers who had been ranked at number 138 or above on Colonial's seniority list. Not all of those drivers responded to appellant's recall letters. Some of those who did respond either declined appellant's offers of employment or worked for appellant only intermittently.

In early 1979, a dispute arose over appellant's obligation to continue to recall Colonial drivers. Since appellant was having

---

**2.** The record does not disclose whether the CBA between appellee and Colonial also contained this provision.

difficulty obtaining a sufficient number of drivers to perform its workload, it wanted to hire drivers who had not been on Colonial's seniority list. It therefore took the position that Colonial drivers who had not "shaped" (i.e., reported for work) or communicated with appellant since 1976 should be removed from the seniority list. Appellee disagreed. The dispute was submitted to the Panel for arbitration.

The panel deadlocked. The dispute accordingly was submitted to Arbitrator Herbert Lippman. He was asked to resolve the following question: "What is the reasonable length of time within which an employee of the Company [appellant] must shape up, call or contact the Company to remain part of the Company work force and retain his seniority?"

On June 27, 1979, Arbitrator Lippman issued his award ("the award" or "the Lippman award"). The award stated that "[a]n employee who does not shape, call or contact the Company for work for a period of one year, shall be deemed to have abandoned his position with the Company and shall no longer be considered an employee of the Company." In an opinion accompanying the award, Arbitrator Lippman stated that 146 Colonial drivers who had not shaped or communicated with appellant for a period in excess of three years "have abandoned their positions with the Company and are no longer members of the work force by their own choice."

In late 1979 or early 1980, Ted Katsaros, a laid-off Colonial driver who had held number 152 on Colonial's seniority list, discovered that appellant was hiring new drivers. After making inquiries he learned of the Lippman award. On June 11, 1980, Katsaros filed an unfair labor practice charge with the NLRB. He charged that appellee, in complicity with appellant, had violated the rights of the Colonial drivers under § 7 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 157 (1982), by contriving a fraudulent arbitration proceeding and failing to inform them of the Lippman award.

After administrative proceedings not relevant to this appeal, Katsaros' charge resulted ultimately in a decision and order filed August 26, 1983 by the NLRB. *Local 282, International Brotherhood of Teamsters*, 267 N.L.R.B. 1130 (1983). The NLRB concluded that "[b]y arbitrarily, and without lawful and legitimate reason, failing to notify employees it represents of the terms of an arbitration award significantly altering the requirements to be fulfilled to maintain their seniority, [appellee] has breached its duty of fair representation in violation of Section 8(b)(1)(A) of the [NLRA, 29 U.S.C. § 158(b)(1)(A) (1982)]." 267 N.L.R.B. at 1131. The NLRB ordered appellee among other things to "[r]equest the arbitrator who heard the arbitration at issue herein to reopen the proceeding to provide for notice of the terms of the award to affected employees and a retroactive grace period for those employees who have been dropped from [appellant's] seniority list", *id.* at 1132, and to "[m]ake whole those employees who lost work due to its unlawful conduct" "by payment to them of an amount equal to that which they would have earned but for its unlawful conduct," *id.* at 1132, 1131. The NLRB also ordered appellee to provide notice of the Lippman award to affected employees by, among other ways, posting copies of the award at its offices. *Id.* at 1132.

In an opinion filed July 19, 1984, we enforced the NLRB's order "in full." *NLRB v. Local 282, supra*, 740 F.2d at 148.

In a letter to appellant dated October 1, 1984, appellee stated that it "hereby requests that the grievance and arbitration proceeding commenced by [appellant], which resulted in the [Lippman] award ... be reopened to provide for notice to affected employees and a retroactive grace period." The letter also stated that, if appellant refused the request, appellee would invoke arbitration procedures under the CBA.

On October 24, 1984, appellant petitioned the New York County Supreme Court for an order staying "arbitration within twenty

days of the date of receipt of [appellee's] demand for arbitration."

On November 9, 1984, appellee removed the state court proceeding to the district court. Jurisdiction in the district court was based on 29 U.S.C. § 185 (1982).

In a letter dated November 26, 1984 ("the arbitration demand"), appellee formally notified the co-chairman of the Panel that appellee was seeking "an investigation and determination of its dispute resulting from the implementation of [the Lippman] award." The letter stated that appellee "seeks, through this proceeding, to provide for notice to affected employees of [appellant], a retroactive grace period and to [sic] a final determination of all contractual issues applicable to the failure of [appellant] to give timely and adequate notice to its employees of the Lippman Award." Appellant asserted that it was entitled to such relief by Section 15 of the CBA which provides in relevant part:

> "When regular employment is not available for an Employee, he shall be laid off for lack of work. During such lay-off, the Employee shall retain seniority without the need to shape regularly. When regular employment becomes available, the Employee on layoff shall be notified by the Employer to return to work by certified mail at his last known address. To preserve his seniority, an Employee must report to work within 3 working days after receipt of such letter."

A copy of the letter also was sent to Arbitrator Lippman under a separate covering letter, dated November 26, 1984, stating that "[t]his letter is being sent to you in compliance with the [NLRB's] Decision and Order." Counsel for appellee informed us at oral argument that it never received a response from Arbitrator Lippman.

Also on November 26, 1984, appellee filed in the district court in the instant proceeding a response to appellant's petition for a stay of arbitration and a cross petition in which it sought an order compelling arbitration of the present dispute. On April 5, 1985, appellant filed a motion in the district court for summary judgment on its petition for a "permanent[ ]" stay of arbitration.

In an opinion and order entered September 16, 1986, the district court denied appellant's petition for a stay of arbitration and granted appellee's cross petition to compel arbitration. A judgment granting appellee's cross petition was entered September 19, 1986. This appeal followed.

For the reasons stated below, we affirm the judgment and the order of the district court.

## II.

### A.

The principles governing the arbitrability of labor disputes are well settled.

■ First, since " 'arbitration is a matter of contract ... a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT&T Technologies, Inc. v. Communications Workers of America*, 106 S.Ct. 1415, 1418 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). *Accord, International Longshoremen's Association v. New York Shipping Association*, 403 F.2d 807, 809 (2 Cir.1968) (Feinberg, J.).

■ Second, "the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *AT & T Technologies, supra*, 106 S.Ct. at 1418. *Accord, International Union of Electrical Workers v. General Electric Co.*, 407 F.2d 253, 255 (2 Cir.1968) (Feinberg, J.), *cert. denied*, 395 U.S. 904 (1969).

■ Third, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. ... [E]ven if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not

by the court asked to order arbitration, but as the parties have agreed, by the arbitrator." *AT&T Technologies, supra,* 106 S.Ct. at 1419. *Accord, United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 568 (1960).

■ Finally, if a collective bargaining agreement contains an arbitration clause, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T Technologies, supra,* 106 S.Ct. at 1419 (quoting *Warrior & Gulf, supra,* 363 U.S. at 582–83). As we stated with regard to this fourth principle in *International Association of Machinists v. General Electric Co.,* 406 F.2d 1046 (2 Cir.1960) (Feinberg, J.):

"It is enough to say ... that it is 'national policy' to encourage arbitration of labor disputes, that doubts as to arbitrability should be 'resolved in favor of coverage,' that language excluding certain disputes from arbitration must be 'clear and unambiguous' or 'unmistakably clear,' and that arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' *This is an imposing litany for the (party seeking to avoid arbitration) to overcome.*"

406 F.2d at 1048 (emphasis added).

Mindful of these principles, we turn to the issue raised on the instant appeal.

**B.**

■ With good reason, appellant does not dispute that the CBA's arbitration clause, standing alone, is sufficiently broad to encompass the present dispute. With one minor exception not relevant to this appeal, the arbitration clause makes arbitrable "[a]ny and all complaints, grievances, controversies or disputes ... in connection with or in relation to this Agree-ment or concerning the interpretation, application, performance or alleged breach thereof by either of the parties ... or with respect to any term or condition of employment hereunder...." Appellee's November 26 arbitration demand asserted that Section 15 of the CBA required appellant to notify the Colonial drivers that they would have to shape in accordance with the Lippman award to retain their seniority status. The arbitration demand thus presents a dispute "in connection with or in relation to [the] Agreement." It also presents a grievance "concerning the interpretation, application, performance or alleged breach thereof", and of course it presents a dispute "with respect to any term or condition of employment".

In *Rochdale Village, Inc. v. Public Service Employees Union,* 605 F.2d 1290 (2 Cir.1979), we stated that "[i]f a court finds that the parties have agreed to submit to arbitration disputes 'of any nature or character,' or simply 'any and all disputes,' all questions ... will be properly consigned to the arbitrator". 605 F.2d at 1295. Since the language in the arbitration clause involved on the instant appeal is equally as broad as, if not broader than, the language of *Rochdale,* the conclusion is inescapable that, standing alone, the instant arbitration clause covers the present dispute.

Rather than claiming that the arbitration clause, standing alone, does not encompass the present dispute, appellant claims that the finality clause limits the scope of the arbitration clause. Appellant bases this claim on *Woodcrest Nursing Home v. Local 144, Hotel Allied Services Union,* 788 F.2d 894 (2 Cir.1986) (per curiam). In *Woodcrest,* a union sought an order compelling arbitration of a dispute with an employer involving a type of employee referred to as a "non-slotted/replacement employee". The collective bargaining agreement between the union and the employer contained a broad arbitration clause that clearly covered the dispute. Another clause in the agreement, however, stated that "[n]on-slotted/replacement employees shall not be subject to the terms and bene-

fits of this agreement". We held that the district court correctly had refused to compel arbitration of the dispute. We stated:

"In determining whether a given dispute must be arbitrated the court looks to all terms of the parties' agreement bearing on arbitration. Even though the words of the agreement's arbitration clause may be broad, its scope may be limited by language elsewhere in the agreement *clearly and unambiguously negating or limiting it with respect to a matter in dispute.*"

*Woodcrest, supra,* 788 F.2d at 898 (emphasis added) (citing *Nolde Brothers, Inc. v. Local No. 358, Bakery Workers Union,* 430 U.S. 243, 255 (1977)).

Appellant argues that the Lippman award resolved the issues raised in the present dispute. Since the finality clause states that arbitration awards "shall be final, conclusive and binding", appellant argues that the finality clause clearly and unambiguously negates the arbitration clause with respect to the present dispute. Appellant asserts that, by virtue of the finality clause, it did not agree to arbitrate the present dispute and therefore that the district court erred in compelling arbitration. We disagree.

The finality clause by its terms does not render inarbitrable any class of disputes. Rather, it states merely that arbitration awards are final and "may be enforced as any other arbitration award in accordance with the laws of the State of New York." Nor does the finality clause here, as the dispositive clause in *Woodcrest* did, make the CBA as a whole inapplicable to any particular subject matter. "In the absence

of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad." *Warrior & Gulf, supra,* 363 U.S. at 584–85. Appellant here has advanced no such "forceful evidence". Indeed, the language of the clause regarding enforcement under New York law, as well as the location of the clause—a miscellaneous provision not juxtaposed to the arbitration clause—both create a strong inference that the parties had no intention whatever to exclude from arbitration any class of disputes. In short, appellant has failed to overcome the "substantial hurdle" which it must in order to defeat the presumption of arbitrability established by the case law. *International Longshoremen's Association, supra,* 403 F.2d at 809.

Since the finality clause does not exclude from arbitration any class of disputes and since the arbitration clause encompasses the present dispute, it follows that the present dispute is arbitrable.[3] Since the arbitration clause makes arbitrable any dispute "concerning the interpretation [or] application" of the CBA, it follows that questions as to the applicability of the finality clause—in the sense of whether the Lippman award adjudicated the issues raised in the present dispute—or as to its effect—in the sense of the res judicata effect of the Lippman award—are assigned, at least in the first instance, to the Panel or the impartial arbitrator. Under these circumstances, we find it neither nec-

---

**3.** Appellant argues that the present dispute is not arbitrable since appellee's sole motivation in pressing the dispute is to obtain damages under the CBA for the loss appellee sustained as the result of its own violation of the NLRA and the NLRB's order directing that appellee make affected employees whole. This argument is without merit—at least at this prearbitration stage of the controversy. To deny arbitration based on appellant's argument in effect would be to rule on the merits of the dispute. This we decline to do. *AT & T Technologies, supra,* 106 S.Ct. at 1419.

Appellant also argues that appellee's arbitration demand is "'so plainly unreasonable that ... it can be seen in advance that no award to [appellee] could receive judicial sanction'". *Emery Air Freight Corp. v. Local Union 295,* 786 F.2d 93, 99 (2 Cir.1986) (Feinberg, C.J.) (quoting *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 555 (1964)). In light of our enforcement of the NLRB order which directed appellee to seek to reopen the proceedings which resulted in the Lippman award, this argument is something less than persuasive. *Local 282, International Brotherhood of Teamsters,* 267 N.L.R.B. 1130, 1132 (1983), *enforced,* 740 F.2d 141 (2 Cir.1984).

essary nor appropriate for us to decide the extent, if any, to which the Lippman award resolved the issues raised in the present dispute.

Our resolution of the issue raised on this appeal conforms with the approach taken by the Third Circuit in *Butler Armco Independent Union v. Armco Inc.*, 701 F.2d 253 (3 Cir.1983). We find that court's analysis to be persuasive. There, a collective bargaining agreement between the parties contained two broad arbitration clauses and a rearbitration clause. The rearbitration clause provided in part that "no grievance will be considered ... which would revoke, reverse, or otherwise alter the terms or conditions of any grievance disposed of as above outlined". *Id.* at 256 n. 2. Although that clause was more restrictive than the one in the instant case, the court held that the rearbitration clause did not bar arbitration of a dispute which was identical to one resolved in an earlier arbitration proceeding. The court stated:

> "Having examined [the] arbitration clauses, we cannot say with 'positive assurance' that they do not assign to the arbitrator the task of determining the applicability and effect of the rearbitration clause. It is clear, therefore, that ... the courts must leave to the arbitrator the task of determining whether consideration of the [subsequent dispute] would violate the re-arbitration clause."

*Id.* at 256 (footnote omitted) (quoting *Warrior & Gulf, supra,* 363 U.S. at 582).

Likewise here, since we cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute", we resolve whatever doubts may exist "in favor of coverage." *Warrior & Gulf, supra,* 363 U.S. at 582-83.[4]

We hold that the present dispute is arbitrable and that the CBA's broad arbitration clause leaves to the arbitrator, at least in the first instance, the task of determining both the extent to which the earlier arbitration award resolved the issues raised in the present dispute and the effect of the finality clause.

The district court correctly granted appellee's cross petition to compel arbitration.

### III.

To summarize:

A petition to compel arbitration will not be denied unless the party seeking to avoid arbitration overcomes the strong presumption in favor of the arbitrability of labor disputes. Although a party cannot be compelled to arbitrate a dispute that he has not agreed by contract to arbitrate, appellant has failed to establish that the finality clause in any way narrows the broad scope of the CBA's arbitration clause. The arbitration clause therefore encompasses the present dispute, including questions as to the applicability and effect of the finality clause.

Accordingly, we hold that the present dispute is arbitrable and that the CBA's broad arbitration clause leaves to the arbitrator, at least in the first instance, the task of determining both the extent to which the earlier arbitration award resolved the issues raised in the present dispute and the effect of the finality clause. The district court correctly granted appellee's cross petition to compel arbitration and correctly denied appellant's petition to stay arbitration.

Affirmed.

---

4. We note that appellant is not barred forever from seeking relief in the federal court. If appellant believes that any award resulting from the instant arbitration proceeding does not have a basis in law, it will not be foreclosed from applying to the district court to vacate the award. *Connecticut Light & Power Co. v. Local 420, International Brotherhood of Electrical Workers,* 718 F.2d 14, 21 (2 Cir.1983) (approach to be taken in reviewing conflicting arbitration awards).