**INTERNATIONAL UNION OF OPER-ATING ENGINEERS LOCAL UN-ION NO. 17, Plaintiff,**

v.

**SWANK ASSOCIATED COMPANY, INC., Defendant.**

**Swank Associated Company, Inc., Third–Party Plaintiff,**

v.

**Local 210 Buffalo and Local 210 Dunkirk of the Laborers' International Union of North America, Third–Party Defendant.**

No. 01–CV–0293A(Sr).

United States District Court, W.D. New York.

Oct. 12, 2001.

Richard D. Furlong, Cheektowaga, NY, for International Union of Operating Engineers Local Union No. 17.

James W. Gresens, Joseph J. Manna, Gresens & Gillen, Buffalo, NY, Charles R. Volk, The Volk Law Firm, Sewickley, PA, for Swank Associated Co., Inc.

Andrew A. Gorlick, Gorlick, Kravitz and Listhaus, New York City, for Laborers International Union of North America, Local 210, AFL–CIO.

## DECISION AND ORDER

SCHROEDER, United States Magistrate Judge.

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment.

## PRELIMINARY STATEMENT

The plaintiff, International Union of Operating Engineers, Local Union No. 17 ("Local Union No. 17"), originally filed this action in New York State Supreme Court, Erie County by way of a petition pursuant to Article 75 of the New York Civil Practice Law and Rules ("CPLR") wherein it sought to compel arbitration of a labor grievance that it filed against Swank Associated Company, Inc. ("Swank") in accor-

dance with a collective bargaining agreement between it and Swank.

Swank removed the matter to this Court on the basis that it is governed by section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA") and thereafter, commenced a third-party action against Local 210—Buffalo and Local 210—Dunkirk—of the Laborers International Union of North America ("Local 210") claiming them to be necessary and indispensable parties for the resolution of the issues at hand. More specifically, Swank contends that a "jurisdictional dispute" has arisen over the assignment of certain work which Local Union No. 17 and Local 210 both claim should be assigned to their members. Since this is a "jurisdictional dispute," Swank avers that the issue is not subject to arbitration under its Agreement with Local Union No. 17, but rather, must be "submitted to the International Unions for settlement." Local 210 joins in this position with Swank. In response, Local Union No. 17 argues that Swank defaulted in contesting its request for arbitration by not initially responding to it in a timely fashion as required under Article 75 of the CPLR and therefore, the matter at hand must be resolved by the arbitrator in accordance with the arbitration provisions set forth in the collective bargaining agreement between them. As a result, Local Union No. 17 has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Swank and Local 210 have submitted responses in opposition to the motion and argue that the issue before this Court is one of arbitrability which must be decided by the Court, *i.e.*, whether the issue is one that is subject to arbitration under the collective bargaining agreement or whether it is expressly precluded from arbitration under said Agreement between Local Union No. 17 and Swank.

## ANALYSIS AND DECISION

The applicable provisions of the collective bargaining agreement between Local Union No. 17 and Swank for purposes of resolving the issue before the Court are found in Articles IV entitled "Grievance Procedure and Arbitration," Article V entitled "Definition and Jurisdiction" and Article XVII entitled "Jurisdictional Disputes."

Article IV, paragraph 1 provides:

1. The parties agree that if **any dispute** arises over the **Interpretation, application** or **meaning** of **any provision** of this Agreement during the term of the Agreement there shall be no cessation, stoppage of work or lockout for any reason whatsoever, except to the extent permitted by 3c, but such matters in controversy or dispute, if any, shall be taken up with a representative of the Employer and the Union within a reasonable time after the complaining party has notice or knowledge of such dispute or controversy. Upon presentation of such a dispute or claim, a representative of the Employer and the Union shall discuss the dispute or claim in an effort to resolve it within twenty-four (24) hours of its presentation by the complaining party unless such time period is extended by mutual consent. In the event the parties are unable to resolve the dispute the complaining party can refer the dispute to arbitration within five (5) work days of the expiration of the twenty-four (24) hours (or whatever time period was mutually extended as set forth above). Within seven (7) calendar days after receipt of such notice, the parties shall designate an Arbitrator as more fully set forth below.

Article IV, paragraph 3(h) provides:

h. The Arbitrator is not vested with any powers to **resolve** jurisdictional dis-

putes where the exercise thereof would conflict or potentially conflict with the Impartial Jurisdictional Disputes Board. Where, however, assignments of work have been clearly recognized (and there are no competing claims for the work by any other craft) the Arbitrator shall have all of the powers hereinabove set forth.

Article V, paragraph 4 entitled UNDERSTANDING provides:

4. UNDERSTANDING

(a) The provisions of this Agreement are based on an effort to bring about more equitable conditions in the Heavy and Highway Construction Industry, and no language in this section shall be construed to evade the principles or intent of this Agreement.

(b) Nothing in this agreement shall conflict with jurisdictional awards to respective trades given by proper authority, recognized by the American Federation of Labor–Congress of Industrial Organization, Building and Construction Trades Department.

(c) The Employer agrees that all work assignments shall be made according to decisions of record, including those published in the so-called Green Book of the National Joint Board for the Settlement of Jurisdictional Disputes and also according to the agreement of record, including those published in the so-called White Book by the Bureau of National Affairs.

(d) In the event there is a doubt concerning the assignment of the work in Article V, Section 3, the parties agree that they shall be governed by the decisions of the National Joint Board for the Settlement of Jurisdictional Disputes as contained in the Green Book or decisions of the record contained in the White Book (BNA). Where no such decisions or award or decision of record

exists, the parties agree that the area past practice shall prevail.

(e) Area past practice shall be determined by a committee composed of the Chairman of the Council Bargaining Committee and the Chairperson of the Union Bargaining Committee, or their duly authorized representatives from the bargaining committees. . . .

Article XVII, paragraphs 1 and 2 provide:

1. The parties hereto mutually agree that in the event of a jurisdictional dispute with any other Union or Unions, the dispute shall be submitted to the International Unions for settlement. . . .

2. The Employer shall assign work in accordance with the trade jurisdiction of the I.U.O.E., decisions of record and International Union agreements. In the event that work assignments are made contrary to the aforementioned principles and an employer operates equipment covered by this agreement without an engineer and/or registered apprentice engineer or apprentice engineer, then two (2) days' pay for each employee that should have been required on the equipment shall be paid to the Engineers Local No. 17 General Fund for every day said machine was operated. . . .

*See* 1999–2000 Agreements Between The Council of Utility Contractors, Inc. and the International Union of Operating Engineers Locals 17, 17A, 17B, And 17RA, at pages 4, 6, 25 and 26, attached as Exhibit A to the Third–Party Complaint (Dkt.# 6) ("Agreement") (emphasis added).

 There is no question that this Court has jurisdiction to decide the initial issue of arbitrability as raised by the parties herein.

The Congress . . . has by § 301 of the LMRA, assigned the courts the duty of determining whether the reluctant party

has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. **An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.**

*United Steelworkers v. Warrior & Gulf Navigation Company,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (emphasis added).

■■■ As the United States Supreme Court long ago ruled, a grievance-arbitration procedure in a collective bargaining agreement is enforceable pursuant to § 301 of the Labor Management Relations Act (29 U.S.C. § 185). *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). However, that is not to say that the Court is the one to decide the substantive merits of the issues raised in the grievance-arbitration procedure agreed upon by the parties, especially when the issue of arbitrability has been raised by one of them.

The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.

Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

*United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

This principle was strongly reiterated by the United States Supreme Court in *AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 651, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) wherein it stated:

It is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning [issues such as is presented herein.] If the court determines that the agreement so provides, then it is for the arbitrator to determine the relative merits of the parties' substantive interpretations of the agreement. It [is] for the court, not the arbitrator, to decide in the first instance whether the dispute was to be resolved through arbitration.

■■ In applying this principle to the case at bar, my reading of the language contained in the aforesaid Articles IV, V and XVII causes me to conclude that it can not be said with "positive assurance that the arbitration clause [at issue herein] is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & Gulf Navigation Company,* 363 U.S. at 582–83, 80 S.Ct. 1347.

The language providing arbitration set forth in Article IV is extremely broad in that the parties have agreed that "**any dispute** over the **interpretation, application** or **meaning** of **any** provision of this Agreement**" is subject to the grievance-

arbitration procedure. *See* Agreement at Article IV, page 4 (Dkt.# 6) (emphasis added).

Local Union No. 17 claims that Swank has violated the collective bargaining agreement by not assigning certain work to its members as required under said Agreement and seeks to have an arbitrator rule on its claim and order a remedy in accordance therewith. This claim by Local Union No. 17 appears to bring into play the provisions set forth in Article V, paragraph 3 which describes in detail the areas and types of work and equipment that fall within the jurisdiction of that Union. Sub-paragraph 4 and sub-subparagraphs (a), (b), (c), (d) and (e) of the same Article V appear to be intended by the parties to the Agreement to express their "understanding" as to what is to be utilized by the arbitrator in resolving issues of doubt about certain work or job assignments governed by the preceding paragraph 3 of Article V. I conclude from a reading of these provisions in paragraphs 3 and 4 of Article V that the parties intended that this language contained therein be utilized as guidelines or "roadmaps" for an arbitrator in determining whether the assignment of or failure to assign certain work constitutes a violation of paragraph 3 of Article V. Local Union No. 17 claims that the alleged failure to assign certain work or jobs to its members constitutes a violation of Article V, paragraph 3 by Swank for which it seeks a remedy as provided in the collective bargaining agreement. This claim certainly falls within the broad definition of a **"dispute"** over the **"interpretation," "application"** or **"meaning of any provision"** within Article V, paragraphs 3 and 4.

Admittedly, paragraph 3(h) of Article IV, at first blush, would seem to prevent the hearing of a "dispute" where the "exercise thereof would conflict or potentially conflict with the Impartial Jurisdictional Disputes Board" by reason of the following language contained in said paragraph:

> The Arbitrator is not vested with any powers to **resolve** jurisdictional disputes . . . .

The key word in the above quote is **"resolve"** and as used therein, I conclude that an arbitrator is prohibited from substantively deciding an issue on the merits which would have the effect of "conflicting or potentially conflicting with the Impartial Jurisdictional Disputes Board." That is not to say, however, that an arbitrator is prohibited by the language of the Agreement from hearing the parties and receiving evidence in order to make a procedural determination as to whether the issue at hand is one that would or could have the effect of creating a conflict or potential conflict with the Impartial Jurisdictional Disputes Board. If the arbitrator determines after hearing the parties and considering all of the evidence presented, that the rendering of an arbitration decision would have such an effect, then the matter is not to be decided on the merits by the arbitrator. Rather, in that instance, the arbitrator's decision should be that in undertaking an "interpretation" or "application" of any "meaning of any provision" of the Agreement, the prohibition contained in paragraph 3(h) of Article IV applies. Further, in implementing that "interpretation" or "application" of the "meaning of any provision" of the Agreement, the arbitrator would be authorized to issue a procedural decision requiring the parties to submit the **substantive** issue to the "International Unions for **settlement**" pursuant to Article XVII of the Agreement.

Stated another way, I find that under the broad language set forth in Article IV, an arbitrator has jurisdiction to initially decide whether a matter involves a "jurisdictional dispute" or whether a decision

"resolving" the dispute would have the effect of conflicting with the Impartial Jurisdictional Disputes Board. If it is concluded that such would be the result, the jurisdiction of the arbitrator to **resolve** the matter terminates and the issue is to be forwarded to the appropriate International Unions for **resolution.** This situation is analogous to that often faced by a court regarding issues of jurisdiction, *i.e.,* a court has jurisdiction to decide whether it has jurisdiction over a particular matter. *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *In re Baldwin–United Corp. Litigation,* 765 F.2d 343 (2d Cir.1985). The rendering of such a decision does not **resolve** the substantive issues at hand, but merely determines whether the matter should continue in that forum for purposes of resolution.

It is also worth noting that in paragraph 4 of Article IV, the parties expressly agreed that "violations concerning wages, hours, or fringe benefit contributions **shall not be subject to the grievance procedure and arbitration provisions of this Article** ....." Specific language was not used by the parties so as to prohibit the initial submission of the question of whether an issue constituted a jurisdictional dispute to an arbitrator for a determination of that question. The parties have merely stated that an arbitrator may not **resolve** such a dispute once it is determined to be a jurisdictional dispute. Therefore, it can certainly be said that the parties impliedly intended and agreed to have an arbitrator decide whether a dispute under the Agreement constituted a jurisdictional dispute and further provided guidance to the arbitrator as to the means or manner by which such disputes were to be resolved, *i.e.,* referral to the International Unions pursuant to Article XVII of the Agreement.

In keeping with the established federal policy of favoring arbitration as the prefer-able means of resolving labor disputes when the parties have agreed to such process, and in resolving doubts in favor of arbitration, I hereby find that the basic issue of whether the grievance filed by Local Union No. 17 constitutes a jurisdictional dispute under the Agreement between the parties is subject to arbitration for the purpose of determining that issue. If it is determined by the arbitrator that the grievance is a jurisdictional dispute between the parties, he is prohibited from resolving the issue since such a finding results in the issue being non-arbitrable under the express terms of the Agreement. Instead, the matter shall be resolved on the merits in accordance with the provisions of Article XVII of the Agreement.

On the other hand, should the arbitrator determine that the issue in controversy is not a jurisdictional dispute, the arbitrator may proceed to decide the matter on the merits in accordance with the terms of the collective bargaining agreement between Local Union No. 17 and Swank.

■ Since Local 210 is not a signatory or party to the collective bargaining agreement between Local Union No. 17 and Swank, it is hereby determined to be without legal standing to participate as a party in the arbitration proceeding ordered herein. However, such determination shall not prevent Swank from calling representatives of Local 210 to testify as witnesses on its behalf in support of its position in the arbitration.

Therefore, it is hereby **ORDERED** as follows:

1. The plaintiff's motion for judgment on the pleadings is denied.

2. The grievance filed by Local Union No. 17 against Swank shall be subject to the arbitration procedure set forth in the collective bargaining agreement between

Local Union No. 17 and Swank for the purpose of having previously-appointed Arbitrator Cullen decide whether the issue at hand constitutes a jurisdictional dispute under the aforesaid collective bargaining agreement. This directive constitutes a finding by the Court that this initial issue is arbitrable under the collective bargaining agreement between Local Union No. 17 and Swank.

3. Jurisdiction of the litigation herein is retained by the Court but all further proceedings in the litigation before the Court are hereby stayed pending a determination by the arbitrator as to whether the issue at hand constitutes a jurisdictional dispute or not.

4. Counsel for the parties herein shall notify the Court of the arbitrator's decision within ten (10) days of receipt of such decision. In the alternative, should the parties resolve the labor dispute on their own and forego the arbitration, counsel for all parties herein shall execute and file a stipulation requesting that the action herein be dismissed with prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure within ten (10) days after such resolution.