Judge SACK concurs dubitante in a separate opinion.
DENNIS JACOBS, Circuit Judge:
Former employees of Chase Investment Securities Corp. (now J.P. Morgan Securities, LLC) filed a putative class and collective action against J.P. Morgan Chase & Co. and Chase Investment Services Corp. (collectively, “Chase”) for violations of state and federal overtime laws. Chase moved to compel arbitration pursuant to an arbitration clause in the plaintiffs’ employment contracts. The United States District Court for the Southern District of New York (Swain, J.) denied the motion. The court interpreted the clause to cover only claims or controversies “required to be arbitrated by the FINRA Rules,” ruled that it thus incorporated the arbitrability restrictions of the FINRA Code of Arbitration Procedure for Industry Disputes (“FINRA Rules”), and applied the current version of FINRA Rule 13204, which prohibits arbitration of claims brought as putative class or collective actions.
On appeal, Chase contends that the arbitration clause incorporates FINRA Rules that govern arbitration procedure, but not rules (like Rule 13204) that govern the scope of arbitrable issues. Chase argues that the district court erred by: (1) construing the arbitration clause to incorporate Rule 13204, and (2) applying the amended version of Rule 13204 in effect at the time of Chase’s motion, rather than the earlier version that was in effect when plaintiffs entered into their contracts. We affirm.
BACKGROUND
The following facts are drawn from plaintiffs’ First Amended Class Action Complaint, which we presume to be true at this juncture. See, e.g., Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 87 (2d Cir.2013).
Chase employs Financial Advisors to sell financial products at its numerous branch locations.[1] Chase classifies these employees as overtime-exempt and does not pay them for hours worked in excess of forty per week. Plaintiffs Lawrence R. Kauf-mann, Susan Hyman, Alan B. Krichman, and Jeffrey Lammert, who were employed as Financial Advisors in New York and New Jersey, contend that Chase’s practices violate the overtime provisions of the New York Labor Law (“NYLL”), the New Jersey State Wage and Hour Law (“NJSWHL”), and the Fair Labor Standards Act (“FLSA”). They plead: (1) NYLL claims on behalf of a putative Rule 23 class of current and former Financial Advisors employed in New York; (2) NJSWHL claims on behalf of a putative Rule 23 class of current and former Financial Advisors employed in New Jersey; and (3) FLSA claims as part of a 29 U.S.C. § 216(b) collective action of current and former Financial Advisors employed na *268 tionwide.[2]
Chase is registered with FINRA, a self-regulatory organization that adopts and enforces rules for its member firms. See Securities and Exchange Commission Release No. 34-56145, 72 Fed.Reg. 42169, 42170 (Aug. 1, 2007). As licensed securities representatives employed by Chase, plaintiffs registered with FINRA and executed the Uniform Application for Securities Industry Registration or Transfer (“Form U4”), under which they agreed to arbitrate any disputes with Chase that are required to be arbitrated by the FINRA Rules.
In addition to the Form U4, plaintiffs executed an employment agreement (the “Chase Agreement”) that contains the following arbitration clause:
Any claim or controversy concerning you arising out of or in connection with the business activities of [Chase], your activities and/or your appointment as a registered representative or your employment and/or the termination thereof required to be arbitrated by the FINRA Rules shall be resolved by individual (not class or collective) arbitration in accordance with the Code of Arbitration Procedure of the FINRA ..., and in accordance with applicable law.... Further, no claims shall be arbitrated on a class or collective action or collective or class-wide basis.
(emphases added).
The arbitration clause thus incorporates the FINRA Rules, but with disputed effects. The issues are (1) whether the clause incorporates FINRA Rule 13204 at all, and (2) whether the parties agreed to apply (a) the version of Rule 13204 in effect at the time they entered into the Chase Agreement or (b) the current, amended version that took effect before Chase filed its motion to compel. The earlier version refused FINRA arbitration of class action claims, while the current version refuses FINRA arbitration of collective action claims as well. The difference between the two versions is thus potentially decisive • as to plaintiffs’ FLSA claims, which are brought as a collective action.
At the time plaintiffs signed the Chase Agreement,[3] FINRA Rule 13204 provided:
(a) Class action claims may not be arbitrated under the Code.
(b) Any claim that is based upon the same facts and law, and involves the same defendants as in a court-certified class action or a putative class action, ... shall not be arbitrated under the Code, unless the party bringing the claim files with FINRA [a notice of non-participation or withdrawal from the class].
(d) A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until:
• The class certification is denied;
• The class is decertified;
• The member of the certified or putative class is excluded from the class by the court; or
*269 • The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.
This paragraph does not otherwise affect the enforceability of any rights under the Code or any other agreement.
FINRA Rule 13204 (effective Dec. 15, 2008 to July 8, 2012) (“Old Rule 13204”). In 2012, FINRA relabeled the existing sections and added a new one:
(b) Collective Actions
(1) Collective action claims under the Fair Labor Standards Act ... may not be arbitrated under the Code.
(2) Any claim that involves plaintiffs who are similarly-situated against the same defendants as in a court-certified collective action or a putative collective action, or that is ordered by a court for collective action at a forum not sponsored by a self-regulatory organization, shall not be arbitrated under the Code, if the party bringing the claim has opted-in to the collective action.
(4) A member or associatéd person may not enforce an agreement to arbitrate in this forum against a member of a certified or putative collective action with respect to any claim that is the subject of the certified or putative collective action until the collective action certification is denied or the collective action is decertified.
FINRA Rule 13204 (effective July 9, 2012) (“New Rule 13204”). Thus, following the 2012 amendment, neither class nor collective action claims can be arbitrated under the FINRA Rules.
Plaintiffs commenced suit on December 19, 2011. On January 14, 2013, Chase moved to compel arbitration based on the Chase Agreement’s arbitration clause. The district court denied the motion, reasoning that the arbitration clause requires arbitration of only those claims required to be arbitrated under the FINRA Rules and that, under New Rule 13204, Plaintiffs’ claims cannot be arbitrated. We affirm.[4]
DISCUSSION
“A district court’s denial of a motion to compel arbitration is reviewed de novo.” Specht v. Netscape Commc’ns Corp., 306 F.3d 17, 26 (2d Cir.2002).
I
Under the Federal Arbitration Act (“FAA”), “[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable.” 9 U.S.C. § 2. In interpreting a validly formed arbitration agreement, we apply a “presumption of arbitrability” if the “arbitration agreement is ambiguous about whether it covers the dispute at hand.” Granite Rock Co. v. Int’l Bhd. of Teamsters, 561 U.S. 287, 301, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010); see also Goldman, Sachs & Co. v. Golden Empire School Fin. Auth., 764 F.3d 210, 215 (2d Cir.2014).
However, this “policy favoring arbitration” is “merely an acknowledgment of the FAA’s commitment to overrule the judiciary’s longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.” Granite Rock, 561 U.S. at
*270 301-02, 130 S.Ct. 2847 (internal quotation marks omitted). Construction of an arbitration agreement is a matter of contract interpretation, and “as with any other contract, the parties’ intentions control.” Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) (internal quotation marks omitted).
So if an arbitration clause is best construed to express the parties’ intent not to arbitrate certain disputes, that intent controls and cannot be overridden by the presumption of arbitrability. Granite Rock, 561 U.S. at 302, 130 S.Ct. 2847; see also Allstate Ins. Co. v. Mun, 751 F.3d 94, 97 (2d Cir.2014). The presumption is a soft one, and has effect “only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate ... [is] best construed to encompass the dispute.” Granite Rock, 561 U.S. at 303, 130 S.Ct. 2847 (emphasis added). The presumption may tip the scale if an agreement is truly ambiguous, see Allstate, 751 F.3d at 97, but it does not alter the controlling question: is the arbitration agreement “best construed to encompass the dispute”?
Citing cases from the Supreme Court and this Circuit, Chase urges that, under the presumption, an arbitration agreement must be interpreted to cover a dispute if the agreement is “susceptible” of such an interpretation, even if the contrary one may be considerably more plausible. Chase further argues that the presumption of arbitrability can be rebutted only by “positive assurances” that a dispute is non-arbitrable.
Most of the cases on which Chase relies were decided in the peculiar and exceptional context of collective bargaining agreements. See Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 78, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998) (cautioning against extending “positive assurances” language in AT & T Techs., Inc. v. Commc’ns Workers of Am., 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), to other contexts). Moreover, every case cited by Chase predates Granite Rock, which made clear that the presumption of arbitrability is a tool for resolving genuine ambiguity, not a bias in favor of arbitration. 561 U.S. at 301-02, 130 S.Ct. 2847.
We thus review the district court’s interpretation under Granite Rock: does the Chase Agreement reflect the parties’ intent to arbitrate plaintiffs’ claims?
II
The disputed phrase in the arbitration clause is “required to be arbitrated by the FINRA Rules,” and the principal interpretive issue is what words that phrase is intended to modify in the following sentence:
Any claim or controversy concerning you arising out of or in connection with the business activities of [Chase], your activities and/or your appointment as a registered representative or your employment and/or the termination thereof required to be arbitrated by the FINRA Rules shall be resolved by individual (not class or collective) arbitration in accordance with the Code of Arbitration Procedure of the FINRA ..., and in accordance with applicable law.
(emphasis added).
Since class and collective action claims cannot be arbitrated under New Rule 13204, the question becomes whether the phrase “required to be arbitrated by the FINRA Rules” applies to the whole category of claims and controversies (in which case plaintiffs’ claims cannot be arbitrated), or only to claims arising out of plain *271 tiffs’ employment (in which case plaintiffs’ claims may be arbitrated as claims arising out of Chase’s business activities or plaintiffs’ activities as registered representatives).
The district court held that the arbitration clause requires individual arbitration only to the extent such arbitration is “required ... by the FINRA Rules.” Since, as discussed, plaintiffs’ class and collective action claims are precluded from arbitration by FINRA Rule 18204, they fall outside the scope of the arbitration clause. We agree.[5]
The arbitration clause begins with two nouns (“claim or controversy”) followed by three modifiers:
• “concerning you”;
• “arising out of or in connection with the business activities of [Chase], your activities and/or your appointment as a registered representative or your employment and/or the termination thereof’; and
• “required to be arbitrated by the FIN-RA Rules.”
The natural reading of this sentence is that each modifier modifies “claim or controversy,” so that only a claim or controversy that satisfies each of the three criteria “shall be resolved by ... arbitration.”
That reading is grammatically sound and makes substantive sense. The arbitration clause requires the whole category of claims arbitrable under the Chase Agreement to be arbitrated “in accordance with” the FINRA Rules. It is therefore logical that the clause also incorporates the limitations of the FINRA Rules as to the scope of arbitrable claims. If the universe of arbitrable claims consists solely of claims “required to be arbitrated by the FINRA Rules,” then such claims may always be arbitrated “in accordance with” the FINRA Rules.
Chase’s competing interpretation is both ungrammatical and substantively flawed. Chase argues that the absence of a comma before the phrase “required to be arbitrated by the FINRA Rules” compels the conclusion that it modifies only the immediately preceding words, “your employment and/or the termination thereof.” This result is required, Chase argues, by the rule of the last antecedent, which provides that “a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows,” Barnhart v. Thomas, 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). See also Am. Int’l Grp. v. Bank of Am. Corp., 712 F.3d 775, 781-82 (2d Cir.2013).
Fastidious use of punctuation is a virtue in a drafter and often commands respect, but here, the absence of the comma does not support Chase’s position. First, while the last antecedent rule can be useful, it “is not an absolute and can assuredly be overcome by other indicia of meaning.” Barnhart, 540 U.S. at 26, 124 S.Ct. 376. Second and more importantly, courts have applied the rule only when the last antecedent can grammatically be modified by the limiting phrase. Hence, in Barnhart, the Supreme Court read the phrase “which exists in the national economy” to modify *272 the immediately preceding noun “work.”[6] Id. Likewise, in United States v. Kerley, we read the restrictive phrase “pursuant to the law of a State or of an Indian tribe” as applicable only to the immediately preceding noun, “administrative process.” 416 F.3d 176, 179 (2d Cir.2005) (interpreting “any amount determined under a court order or an order of an administrative process pursuant to the law of a State or of an Indian tribe ” (emphasis added)).
In this case, the restrictive phrase “required to be arbitrated by the FINRA Rules” follows two other restrictive phrases that unquestionably modify the only available antecedent: “claim or controversy.” The phrase “your employment and/or the termination thereof’ is integral to the phrase “arising out of ... your employment and/or the termination thereof,” which in turn modifies “claim or controversy.” The last antecedent rule does not apply because there is only one antecedent to which all of the modifiers must refer: “claim or controversy.”
Chase’s interpretation is also substantively flawed. As discussed, the arbitration clause unquestionably requires arbi-trable claims to be resolved before FINRA and “in accordance with the FINRA Rules.” But it is impossible to arbitrate plaintiffs’ class and collective action claims before FINRA, since New Rule 13204 prevents FINRA arbitrators from entertaining class and collective action claims. See FINRA Rule 13203(a) (“The Director [of FINRA Dispute Resolution] may decline to permit the use of the FINRA arbitration forum if the Director determines that, given the purposes of FINRA and the intent of the Code, the subject matter of the dispute is inappropriate.”) Again, the district court’s reading obviates this interpretive problem: if the only claims that are arbitrable under the Chase Agreement are those that are “required to be arbitrated by the FINRA Rules,” then every arbi-trable claim may be resolved by FINRA arbitrators.
That the arbitration clause calls for “individual (not class or collective) arbitration” does not assist Chase. That language simply echoes New Rule 13204, which prohibits individual arbitration of claims that are the subject of putative class or collective actions, unless the party asserting those claims declines to proceed on a class or collective basis or the court decertifies (or declines to certify) the class or collective action.[7] New Rule 13204(a)(2), (b)(2).
Finally, we are unpersuaded by Chase’s argument that interpreting the arbitration clause to incorporate the FINRA Rules would violate the interpretive canon against surplusage. It is true that plaintiffs separately signed Form U4 agreeing to arbitrate claims required to be arbitrated by the FINRA Rules, but there is nothing unusual about an employer’s conforming its in-house documents to requirements that already exist in standard FIN-RA forms. In any event, the surplusage canon does not apply because the Chase *273 Agreement and Form U4 are not provisions of a single contract. Cfi Int’l Multi-foods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 86 (2d Cir.2002) (“We disfavor contract interpretations that render provisions of a contract superfluous.”)
Accordingly, we hold that the district court correctly interpreted the arbitration clause to require arbitration of only those claims “required to be arbitrated by the FINRA Rules.”
III
We next consider whether the arbitration clause incorporates Old Rule 13204 (which was effective when plaintiffs entered into the Chase Agreement) or New Rule 13204 (which became effective prior to Chase’s motion to compel and remains the current rule). The former barred FINRA arbitration of class action claims, while the latter added a parallel provision concerning collective actions.
As the district court observed, the arbitration clause contains no wording on the effect (if any) of amendments to the FIN-RA Rules. However,, as discussed supra, the arbitration clause requires that arbi-trable claims be resolved “in accordance with” the FINRA Rules; and New Rule 13204 expressly provides that any claim that is part of a pending class or collective action suit “shall not be arbitrated under the Code.” New Rule 13204(a)(2), (b)(2). It cannot be disputed that New Rule 13204 governs FINRA arbitrators. So unless the arbitration clause tracks amendments to the FINRA Rules, some claims arbitra-ble under the clause (in this case, FLSA collective action claims) would be required to be arbitrated before a body that does not entertain them. See FINRA Rule 13203(a) (“The Director [of FINRA Dispute Resolution] may decline to permit the use of the FINRA arbitration forum if the Director determines that, given the purposes of FINRA and the intent of the Code, the subject matter of the dispute is inappropriate.”).
We think that the parties could not have intended to arbitrate claims before an arbi-tral body that, under its own rules, cannot hear them. As the district court concluded: the parties must have intended the FINRA Rules (as they may be amended) to govern both the scope of arbitrability and the manner of arbitrating claims between Chase and its employees.
Chase argues that the district court’s ruling raises a problem of retroactivity. However, contracts can and often do contain terms that are subject to the impact of future developments. A party that agrees to arbitrate before a particular forum according to the rules of that forum assumes the risk that the- forum’s rules might change.
In any event, the amendment of Old Rule 13204 did not upset expectations. Since 1999, FINRA has informally taken the position that collective action claims cannot be arbitrated, even under Old Rule 13204. See FINRA Regulatory Notice 12-28. FINRA amended the rule to make its position explicit only after district courts refused to apply Old Rule 13204 to FLSA collective actions. Id.; see Velez v. Perrin Holden & Davenport Capital Corp., 769 F.Supp.2d 445, 447 (S.D.N.Y. 2011); Gomez v. Brill Sec., Inc., No. 10 Civ. 3503(JSR), 2010 WL 4455827, at *2 (S.D.N.Y. Nov. 2, 2010); Chapman v. Lehman Bros., Inc., 279 F.Supp.2d 1286, 1290 (S.D.Fla.2003). The 2012 amendment was thus the formal statement of a longstanding FINRA position.
CONCLUSION
For the foregoing reasons, we affirm the decision of the district court.

. The term "Financial Advisors” covers job titles that include "Personal Financial Advis-ors, Independent Financial Advisors, Financial Advisor Associates, Senior Financial Consultants, Investment Sales Representatives, and/or RIS Team Leaders.”

. Kaufmann and Lammert are members of the putative New York class, while Hyman and Krichman are members of the putative New Jersey class. All four plaintiffs are members of the FLSA collective action.

. Other members of the putative class and collective action — including Jeffrey Lloyd, the lead plaintiff below — either did not execute or executed a different version of the Chase Agreement, and are not parties to this appeal.

. Because we conclude that the district court correctly interpreted the arbitration clause to incorporate the FINRA Rules, we do not consider the argument—advanced by amicus curiae Public Justice, P.C.—that FINRA members cannot contractually avoid the FINRA Rules.

. We decline plaintiffs’ invitation to accord collateral estoppel effect to the Ninth Circuit’s decision in Alakozai v. Chase Inv. Servs. Corp., 557 Fed.Appx. 658 (9th Cir.2014), which also interpreted the Chase Agreement. Offensive collateral estoppel is inappropriate "in cases where a plaintiff could easily have joined in the earlier action,” but declined to do so in favor of a “wait and see” approach. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Since plaintiffs opposed consolidation with Alakozai in the proceedings below, they cannot now benefit from a favorable ruling in Alakozai.

. The statute in Barnhart read: " 'An individual shall be determined to be under a disability only if ... he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 540 U.S. at 23, 124 S.Ct. 376 (quoting 42 U.S.C. § 423(d)(2)(A)) (emphasis modified).

. The Chase Agreement contains no waiver of plaintiffs’ right to participate in class and collective action lawsuits. Cf. Cohen v. UBS Fin. Servs., Inc., No. 12 Civ. 2147(BSJ)(JLC), 2012 WL 6041634, at *1 (S.D.N.Y. Dec. 4, 2012) (“[Y]ou waive any right to commence, be a party to or an actual or putative class member of any class or collective action arising out of or relating to your employment.” (emphasis added)).