INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 17, AFL–CIO, Plaintiff,

v.

UNION CONCRETE AND CONSTRUCTION CORP., Defendant.

15–CV–372

United States District Court, W.D. New York.

Signed November 30, 2015

---

**13.** The Court denies Plaintiff's request that this motion be granted without prejudice.

Brian Joseph Laclair, Nathaniel G. Lambright, Blitman & King LLP, Syracuse, NY, for Plaintiff.

Patricia Gillen, Steven William Klutkowski, Duke Holzman Photiadis & Gresens LLP, Buffalo, NY, for Defendant.

## ORDER

### HONORABLE RICHARD J. ARCARA, UNITED STATES DISTRICT COURT

The instant matter was referred to Magistrate Judge Jeremiah J. McCarthy pursuant to 42 U.S.C. § 636(b)(1) for supervision of all pretrial proceedings. Plaintiff International Union of Operating Engineers, Local 17, AFL–CIO ("Local 17") and defendant Union Concrete and Construction Corporation ("UCC") filed cross-motions for summary judgment. (Dkt. Nos. 9 and 15) On August 13, 2015, Magistrate Judge McCarthy issued a Report and Recommendation recommending that UCC's motion for summary judgment be granted, and that Local 17's motion for similar relief be denied. (Dkt. No. 23)

On September 11, 2015, Local 17 filed objections to the Report and Recommendation. (Dkt. No. 29) UCC filed a response on September 25, 2015 (Dkt. No. 31) and Local 17 filed a reply on October 2, 2015 (Dkt. No. 33). Oral argument was held on October 15, 2015, at which time the Court considered the matter submitted.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon *de novo* review, and after reviewing the submissions from the parties and hearing oral argument, the Court hereby adopts Magistrate Judge McCarthy's findings in their entirety.

Accordingly, for the reasons set forth in Magistrate Judge McCarthy's Report and Recommendation, plaintiff Local 17's motion for summary judgment is denied and defendant UCC's motion for summary judgment is granted.

The Clerk of the Court is instructed to close the case.[1]

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

### JEREMIAH J. MCCARTHY, United States Magistrate Judge

This case has been referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [5].[1] Before me are cross-motions for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56 by defendant Union Concrete and Construction Corp. ("UCC") [9] and plaintiff International Union of Operating Engineers, Local 17 ("Local 17") [15]. Oral argument was held on July 27, 2015 [21], followed by Local 17's post-argument submission [22] in response to my July 29, 2015 Text Order [20]. For the following reasons, I recommend that UCC's motion be granted, and that Local 17's motion be denied.

## BACKGROUND

Pursuant to § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), Local 17 seeks to compel arbitration of a labor grievance which it filed against UCC on March 16, 2015,

---

1. In light of this Court's decision with respect to the summary judgment motions, defendant's motion to strike (Dkt. No. 32) is dismissed as moot.

1. Bracketed references are to CM/ECF docket entries.

claiming that UCC violated the parties' Collective Bargaining Agreement ("CBA") in connection with emergency snow removal work which it performed for the County of Erie in November 2014. Complaint [1].

For purposes of these motions, the following facts are undisputed:[2] "UCC is engaged in heavy and highway construction, performing bridge and highway work on both small and large projects." UCC's Statement of Undisputed Facts [9–3], ¶ 1. "Between November 17, 2014 and November 20, 2014, historic snow storms hit the Buffalo area, dropping nearly 7 feet of snow in some areas, and 3 to 4 feet of snow in many areas. The storms caused Governor Cuomo to declare a state of emergency." *Id.,* ¶ 2. "In connection with the November 2014 snow storms, Erie County ... engaged UCC to perform emergency snow removal and clean up work." *Id.,* ¶ 3.

"UCC and ... Local 17 are parties to a [CBA] effective from April 28, 2014 to March 31, 2017. *Id.,* ¶ 5. "On or about March 16, 2015, Local 17 filed a grievance claiming that UCC violated various CBA provisions when performing the November 2014 emergency snow removal work for Erie County." *Id.,* ¶ 6.[3] "On or about March 31, 2015, the parties met to discuss the grievance and were unable to come to a resolution. Because a resolution could not be reached, Local 17 advised that it would be seeking arbitration. UCC advised that it may seek to stay any arbitration on the grounds that the emergency work UCC performed in connection with

the November 2014 snow storms is not covered by the CBA." *Id.,* ¶ 7.

"On or about April 3, 2015, the parties selected an arbitrator. At the time, UCC's attorney reserved UCC's rights to seek a stay of the arbitration on the grounds that the dispute was not covered by the CBA or its arbitration provision." *Id.,* ¶ 8. "On April 18, 2015, UCC's attorney advised Local 17's counsel that it would be filing for a declaratory judgment/stay in federal court." *Id.,* ¶ 9. "On April 27, 2015, Local 17 filed the Complaint in this matter seeking an order compelling UCC to provide proceed to arbitration." *Id.,* ¶ 10. These motions ensued.

## ANALYSIS

### A. The Proper Framework for Determining Arbitrability

■■■ "Arbitration is strictly a matter of consent ... and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. International Brotherhood of Teamsters,* 561 U.S. 287, 299, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) (emphasis in original). Therefore, "the judicial inquiry under [LMRA] § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance". *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

■■■ Local 17 "agrees that the Court, not the arbitrator, must decide whether the parties agreed to arbitrate the under-

---

**2.** All of these facts are admitted by Local 17. *See* Local 17's Response to Defendant's Statement of Undisputed Material Facts [15–5], ¶¶ 1–3, 5–10.

**3.** In 2007, the parties arbitrated Local 17's grievance under a similarly worded CBA involving UCC's emergency storm cleanup work

in connection with the 2006 "October Surprise" ice storm. In a June 12, 2007 Opinion and Award ( [9–2], pp. 78–97 of 97), arbitrator Michel S. Lewandowski denied the grievance, concluding that "the work activity (storm clean-up) ... was not work as defined by the Agreement". *Id.,* p. 96 of 97.

lying dispute." Local 17's Reply Memorandum of Law [18], p. 4. "To satisfy itself that such agreement exists, the court must resolve *any issue* that calls into question the ... applicability of the specific arbitration clause that a party seeks to have the court enforce." *Granite Rock*, 561 U.S. at 297, 130 S.Ct. 2847 (emphasis added).

Local 17 argues that "there is a broad presumption in favor of arbitration". Local 17's Memorandum of Law [15–1], p. 11. However, that presumption applies "only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand". *Granite Rock*, 561 U.S. at 301, 130 S.Ct. 2847,[4] Therefore, "if an arbitration clause is best construed to express the parties' intent *not* to arbitrate certain disputes, that intent controls and cannot be overridden by the presumption of arbitrability". *Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 270 (2d Cir.2015) (emphasis in original); *State of New York v. Oneida Indian Nation of New York*, 90 F.3d 58, 62 (2d Cir.1996) ("it is the duty of courts to enforce not only the full breadth of the arbitration clause, but its limitations as well").

Local 17 points to Article IV, § 1 of the CBA, which provides for arbitration of "*any* dispute ... over the interpretation, application or meaning of *any* provision of this Agreement during the term of the Agreement" ([15–3], p. 8 of 52) (emphasis added). "Read naturally, the word 'any' has an expansive meaning." *United States v. Gonzales*, 520 U.S. 1, 5, 117 S.Ct. 1032,

137 L.Ed.2d 132 (1997). However, "[t]he word 'any' can mean different things depending upon the setting", *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 234, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008), and "in some circumstances ... may warrant a narrower interpretation". *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 118 (2d Cir.2007). It "must be limited in its application to those objects to which [it was] intended to apply". *Ali*, 552 U.S. at 234, 128 S.Ct. 831.

Therefore, "the Court must not confine its interpretation to the arbitration clause but look to the contract as a whole, for although the parties may broadly agree to arbitrate they may also place limits on that arbitrability". *Katz v. Feinberg*, 167 F.Supp.2d 556, 566 (S.D.N.Y. 2001), *aff'd*, 290 F.3d 95 (2d Cir.2002). "Even though the words of [an] agreement's arbitration clause may be broad, its scope may be limited by language elsewhere in the agreement clearly and unambiguously negating or limiting it with respect to a matter in dispute". *Woodcrest Nursing Home v. Local 144, Hotel, Hospital, Nursing Home and Allied Services Union, S.E.I.U., AFL–CIO*, 788 F.2d 894, 898 (2d Cir.1986).

For example, in *Woodcrest Nursing Home*, the union sought to arbitrate disputes involving "non-slotted/replacement employees". The arbitration clause of the parties' CBA called for arbitration of "all complaints, disputes, controversies or grievances arising between the parties

---

4. While Local 17 argues that "[c]ases involving ordinary contract and commercial arbitration disputes are irrelevant to the issue of the arbitrability of a labor dispute under a collective bargaining agreement" (Local 17's Memorandum of Law [15–1], p. 7), the *Granite Rock* framework applies to "commercial *and labor* disputes". *Granite Rock*, 561 U.S. at 301, 130 S.Ct. 2847 (emphasis added).

"When courts interpret CBAs, traditional rules of contract interpretation apply as long as they are consistent with federal labor policies." *Aeronautical Industrial District Lodge 91 of International Association of Machinists and Aerospace Workers, AFL–CIO v. United Technologies Corp., Pratt & Whitney*, 230 F.3d 569, 576 (2d Cir.2000).

hereto involving questions of interpretation or application of any clause of this agreement". 788 F.2d at 896. However, another clause of the CBA provided that "non-slotted/replacement employees shall not be subject to the terms and benefits of this agreement". *Id.* at 897.

Recognizing that "the arbitration clause ... is indeed broadly worded and standing alone would call for arbitration of the parties' present disputes" (*id.* at 898), the court nevertheless rejected the union's demand for arbitration, reasoning that "we cannot close our eyes to the plain meaning of the words used. Since Par[agraph] C(8) clearly excludes non-slotted employees from discharge and layoff rights, which are 'terms and benefits' of the agreement available only to slotted employees, it also unambiguously excludes arbitration of disputes with respect to such rights on the part of non-slotted employees.... Arbitration remains one of 'the terms and benefits' of the agreement, to which non-slotted employees 'shall not be subject'." *Id.*

As in *Woodcrest Nursing Home,* the broad language of the arbitration clause in this case is limited by other provisions of the CBA. Article I, § 2(d) states that if UCC "engage[s] in any class of work not embodied in Heavy and/or Highway Construction as hereinafter defined, then this Agreement is of no force and effect on any such project". Local 17 admits that "the terms of the CBA do not apply when the Company engages in ... work that is not 'Heavy and/or Highway Construction' work" (Local 17's Reply Memorandum of Law [18], p. 7), and one of those "terms" is the arbitration clause itself. Therefore, unless the grievance relates to "Heavy and/or Highway Construction", the arbi-

tration clause—even if "extremely broad"[5]—is "of no force and effect".

Local 17's argument that the arbitration clause "calls for the arbitration of 'any dispute' arising out of the CBA, without exception" (Local 17's Memorandum of Law [15–1], p. 11) begs the question of whether this dispute "arises out of the CBA". While Local 17 alleges that UCC "performed work covered by the CBA" and "did not comply with [its] terms" during the November storm (Complaint [1], ¶¶ 12, 13), "facts are more important than legal labels in determining whether a claim is arbitrable". *Communication Workers of America v. Avaya, Inc.,* 693 F.3d 1295, 1301 (10th Cir.2012).

"We may not accept an arbitration proponent's ... claim that the grievance arises [under the CBA] without critical examination. Unquestioning acceptance of the Union's characterization of its claims is inconsistent with our duty to determine arbitrability because it leaves the scope of the arbitration clause subject to the unilateral and unfettered discretion of the Union." *Rite Aid of Pennsylvania, Inc. v. United Food and Commercial Workers Union, Local 1776,* 595 F.3d 128, 132 (3rd Cir.2010). *See also E.M. Diagnostic Systems, Inc. v. Local 169, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 812 F.2d 91, 95 (3rd Cir.1987) ("The collective bargaining agreement in this case provides for arbitration of 'any dispute arising out of a claimed violation of this Agreement.' The Union argues that it has made a claim that the employer's conduct violates the agreement and that this 'claimed violation' alone is sufficient to bring the dispute within the scope of the agreement's broad arbitration clause. Such an

---

**5.** "The language providing arbitration set forth in Article IV is extremely broad." *International Union of Operating Engineers Local*

*Union No. 17 v. Swank Associated Co., Inc.,* 181 F.Supp.2d 240, 244 (W.D.N.Y.2001) (Schroeder, M.J.).

interpretation of the contract, however, leaves the scope of the arbitration clause subject to the unilateral and unfettered discretion of the Union").

■■■■ "It is the court's duty to interpret the agreement", *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 651, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), in order to "ascertain[ ] whether the party seeking arbitration is making a claim which on its face is governed by the contract". *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). In making that determination, the court is "limited to the construction of the arbitration clause and any contractual provisions relevant to its scope, as well as any other 'forceful evidence' suggesting that the parties intended to exclude the disputes at issue from arbitration." *Rite Aid*, 595 F.3d at 131–32. While the court may not "*rule* on the merits of the potential underlying claims", *AT & T Technologies*, 475 U.S. at 649, 106 S.Ct. 1415 (emphasis added), "where the merits and arbitrability questions are inextricably intertwined, a court's arbitrability decision may, of necessity, *touch incidentally* on the merits." *Rite Aid*, 595 F.3d at 136 (emphasis added).

## B. What is the Meaning of "Heavy and/or Highway Construction"?

Whether the arbitration clause has any "force or effect" with respect to Local 17's grievance hinges on the meaning of the phrase "Heavy and/or Highway Construction". In interpreting that phrase, I "cannot close [my] eyes to the plain meaning of the words used". *Woodcrest Nursing Home*, 788 F.2d at 898.

"In turning to the plain meaning, construction is defined as 'the act of putting together parts to form a complete, integrated object' (*Webster's 3d New International Dictionary* (1993), p. 489); 'the act of building by combining or arranging parts or elements' (*Black's Law Dictionary* (8th ed.2004), p. 332); 'the creation of something new' (*Black's Law Dictionary* (6th ed.1990) p. 312)." *American States Insurance Co. v. Edgerton*, 2008 WL 4239000, *6 (D.Idaho 2008). *See also* UCC's Memorandum of Law [9–4], pp. 7–8 (offering the same definition). In context, the words "heavy" and "highway" must be deemed to modify the word "construction", for "[w]ithout attaching the word heavy to something, the sentence makes no sense. Employees engaged in highway construction make[s] sense. Employees engaged in heavy construction make[s] sense. Employees engaged in heavy makes no sense. The word must be attached to something." 2007 Opinion and Award [9–2], p. 94 of 97.

■■■■ UCC argues that "[g]iving the words their plain meaning, under no reasonable reading could 'Heavy and Highway Construction' be construed to include emergency snow removal work". UCC's Memorandum of Law [9–4], p. 7. Local 17 offers no contrary argument, other than to note that UCC's "position in this regard is inconsistent with the fact that it proceeded to arbitration without objection in 2007 on what it claims is the same 'covered work' question raised in the present grievance". Local 17's Memorandum of Law [15–1], p. 12, n. 2. However, that fact cannot change the plain meaning of the CBA. "When provisions in the agreement are unambiguous, they must be given effect as written.... Only when provisions are ambiguous may courts look to extrinsic factors— such as ... past practices." *Aeronautical Industrial District Lodge 91*, 230 F.3d at 576; *Cumberland Farms, Inc. v. Rian Realty, Ltd.*, 2007 WL 1232072, *10 (E.D.N.Y.2007) ("Courts ... will only consider the practical construction placed on a

contract by the parties when the contract is ambiguous").

## C. Does Local 17's Grievance Relate to "Heavy and/or Highway Construction"?

█ "In weighing whether a contract requires arbitration, the court applies a standard similar to that applicable for a motion for summary judgment.... It is therefore proper (and in fact necessary) to consider extrinsic evidence when faced with a motion to compel arbitration." *Philippe v. Red Lobster Restaurants LLC,* 2015 WL 4617247, *2 (S.D.N.Y.2015).

█ UCC's Statement of Undisputed Material Facts alleges that "UCC performed no heavy or highway construction work for Erie County in connection with the November 2014 snow storms". [9–3], ¶ 4. It supports that statement by reference to the Affidavit of its president, Robert Hill [9–2], ¶ 13 ("during UCC's emergency snow removal, absolutely no construction work was performed .... This was strictly emergency storm clean-up work and coordination"). While Local 17's Response denies this allegation ( [15–5], ¶ 4), the Response does not cite to evidentiary support for that denial. "Whether moving for summary judgment or opposing it, a party may not nakedly assert that a fact is ... genuinely disputed". 11 *Moore's Federal Practice* § 56.90 (3d ed.2015). Instead, it "must point to specific evidence in the record" supporting its position. *Salahuddin v. Goord,* 467 F.3d 263, 273 (2d Cir.2006).

The only "evidence" cited by Local 17 is paragraph 5 of the Affidavit of its business manager and president, Norman Noon,[6] alleging that "[o]n or about and November

18–25 2014, and at times thereafter, the Company performed work covered by the CBA and also subcontracted work covered by the CBA ... in the wake of a severe winter storm that affected the Buffalo area". Mr. Noon's conclusory assertions that the work was covered by the CBA, without any explanation as to why that is so, are insufficient to create a genuine issue of fact. *See Woodman v. WWOR–TV, Inc.,* 411 F.3d 69, 75 (2d Cir.2005) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful").

## D. Is Summary Judgment Premature?

█ Local 17 also argues that summary judgment is "premature because there has been no discovery or even a responsive pleading filed". Local 17's August 4, 2015 Letter Brief [22], p. 5, n. 2. Neither contention is persuasive. The fact that UCC moved for summary judgment prior to answering the Complaint does not render its motion premature, since Rule 56(b) allows the motion to be filed "*at any time* until 30 days after the close of all discovery" (emphasis added). *See Morrison v. Stroman,* 2014 WL 6685510, *2 and n. 4 (W.D.N.Y.2014) (Arcara, J./McCarthy, M.J.) ("In lieu of answering the Amended Complaint, defendant Stroman moved for summary judgment.... This procedure is permissible").

█ Nor does the fact that no discovery has been conducted bar summary judgment, absent a proper showing that discovery might reveal evidence sufficient to defeat the motion. "A reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in op-

---

6. *See* Local 17's August 4, 2015 Letter Brief [22], p. 5, n. 2. While that submission also cites Local 17's Complaint and its Response to UCC's Statement of Undisputed Material Facts, neither document constitutes evidence.

position to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit ... and the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir.1994). Moreover, "[t]he affidavit must include the nature of the uncompleted discovery [and] how the facts sought are reasonably expected to create a genuine issue of material fact". *Id.* at 1138. Therefore, "[a] court can reject a request for discovery, even if properly and timely made through a Rule 56(f) affidavit, if it deems the request to be based on speculation as to what potentially could be discovered". *Id.*[7]

Since Local 17 has failed to properly contest UCC's factually-supported assertion that it performed no heavy and/or highway construction work in connection with the November 2014 storm, pursuant to Rule 56(e)(2) I "consider the fact undisputed for purposes of the motion". However, because that determination is "for purposes of the motion only", *Moore's Federal Practice*, § 56.99[2][b], "[a] fact that is deemed admitted for purposes of the summary judgment ... will not be considered undisputed for any other purpose". *Id.*, § 56.81[3][b][vi].

Therefore, on the present record I conclude that Local 17's request for arbitration of its claim that UCC violated the CBA should be rejected, without prejudice to its ability to litigate that claim. *See Oneida Indian Nation*, 90 F.3d at 63–64 ("courts should avoid deciding the merits in determining arbitrability. That is precisely what we will not do. We reject the Nation's invitation to speculate on the merits of its contention.... The parties expressed their intent to exclude claims such as this from mandatory arbitration, thus it is for the district court to determine the merits of the State's claim").

## CONCLUSION

For these reasons, I recommend that UCC's motion for summary judgment [9] be granted and that Local 17's motion for summary judgment [15] be denied. Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by August 31, 2015 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely ... waives any right to further judicial review of [this] decision". *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir.1988); *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

■ Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. *Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988). The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection ... supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the

---

7. Although Rule 56(f) was redesignated as Rule 56(d) in 2010, the Advisory Committee Notes state that "[s]ubdivision (d) carries forward without substantial change the provisions of former subdivision (f)".

new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.